# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 25-30440-EDK |
| DAVID T. MARRETT, | ) |  |
| SANDY J. MARRETT, | ) |  |
|  | ) |  |
| Debtors | ) |  |
|  | ) |  |
| DAVID T. MARRETT, | ) | Adversary Proceeding |
| SANDY J. MARRETT, | ) | No. 25-03006 |
|  | ) |  |
| Plaintiffs | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| AROOSTOOK COUNTY FEDERAL | ) |  |
| SAVINGS & LOAN, ZURICH NORTH | ) |  |
| AMERICAN INSURANCE COMPANY, | ) |  |
| SOLMAN & HUNTER, P.A., MARDEN | ) |  |
| DUBORD, BERNIER & STEVENS, P.A., | ) |  |
| O'DONNELL, LEE, MARDEN, DUBORD, | ) |  |
| MONAGHAN LEAHY, LLP, WILLIAM | ) |  |
| DRUARY, JR., LAUREN K. SOUZA, | ) |  |
| DIANE GLIDDEN, DIANA DURGIN, | ) |  |
| CHRISTINE KENNEDY-JENSEN, JOHN | ) |  |
| AND JANE DOE, | ) |  |
|  | ) |  |
| Defendants | ) |  |

## MEMORANDUM OF DECISION

Before the Court are motions to dismiss filed by several defendants in this adversary proceeding seeking dismissal of the complaint (the "Complaint") brought by David T. Marrett and Sandy J. Marrett, the plaintiffs in this adversary proceeding and debtors in the underlying Chapter 13 bankruptcy case (the "Debtors").

1

This decision addresses the motions to dismiss filed by (1) Aroostook County Federal Savings and Loan ("Aroostook"); (2) Solman & Hunter, P.A. ("Solman & Hunter"), Monaghan Leahy, LLP ("Leahy"), Christine Kennedy-Jensen ("Kennedy-Jensen"), Lauren K. Souza ("Souza"), Marden, Dubord, Bernier & Stevens, P.A. ("Marden"), William Druary, Jr. ("Druary"), and Richard Solman ("Solman"); and (3) Fidelity and Deposit Company of Maryland ("Zurich")[1] (collectively, the "Motions to Dismiss").

I.   FACTS AND TRAVEL OF THE CASE[2]

This adversary proceeding is but the most recent installment in a series of lawsuits across various state and federal courts involving the Debtors, all of which relate to real property located at 35 York Street, Caribou, Maine (the "Property").

In September 2004, the Debtors borrowed funds from Aroostook to finance the purchase of the Property and granted Aroostook a mortgage on the Property to secure the loan.[3]   In November 2009, the Debtors refinanced their existing mortgage obligation, obtaining a new loan from Aroostook secured by a mortgage on the Property (the "Mortgage").[4]   The Debtors have not

---

[1] Fidelity and Deposit Company of Maryland ("F&D") was incorrectly sued as Zurich.  *See* Zurich's Mot. to Dismiss, Dkt. No 57.  However, for ease of reference, this memorandum of decision will continue to refer to F&D as Zurich.

[2] The facts are drawn from the Complaint, the attachments thereto, documents central to the claims, documents fairly incorporated into the complaint, facts susceptible to judicial notice, concessions in response to the motions to dismiss, and documents the authenticity of which are not disputed.  *See Cheng v. Neumann*, 51 F.4th 438, 441 (1st Cir. 2022); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

[3] *See* Warranty Deed, Notice of Suppl. Authority and Procedural Development ("Notice of Suppl. Authority"), Ex. B, Dkt. No. 77; Letters Approving Mortgage Loan Request and Settlement Statement, Notice of Suppl. Authority, Ex. A-1, Dkt. No. 77.

[4] December 1, 2009 Mortgage and Settlement Statement, Ex. A2, Notice of Suppl. Authority, Dkt. No. 77.

2

resided at the Property since 2017.[5]  They fell into default on the Mortgage in July 2021.[6]  On September 14, 2021, Aroostook sent the Debtors a "35-Day Notice of Right to Cure Default" letter (the "September 2021 Letter"), providing the Debtors 35 days to pay a $5,979.45 default balance, and further providing that if the Debtors failed to timely cure the default, Aroostook would foreclose on the mortgage.[7]

The Debtors listed the Property for sale on October 25, 2021 to avoid foreclosure litigation, informing Aroostook by email.  Aroostook later proposed a deed in lieu of foreclosure.  In an email dated November 18, 2021, in which Aroostook requested a response to its proposal, Aroostook indicated that a representative had visited the Property, that the furnace was not working, and that there was no oil in the tank.  As a result, a technician was called to fix the furnace and to put fuel into the tank to protect the Property from frozen pipes and frost damage.  The Debtors then responded on November 23, 2021, demanding that Aroostook cease communications with the realtor and return any keys in their possession.

In January 2022, Aroostook filed a complaint against the Debtors in Aroostook County Superior Court for foreclosure of the Property (the "Foreclosure Case").  In response, the Debtors filed an answer and asserted several counterclaims.[8]  At some point between late April and late May 2022, Sandy Marrett returned to Maine and discovered that the Property had been damaged by water, which the Debtors assert is Aroostook's fault.

---

[5] *See* Nov. 20, 2025 Hr'g Tr. 21:4–6, Case No. 25-30440-EDK, Dkt. 214.

[6] *See* September 14, 2021 35-Day Notice of Right to Cure Default, Compl., Ex. A-2, Dkt. No. 1.

[7] *Id.*

[8] The Debtors asserted five counterclaims: (1) breach of the duty of good faith and fair dealing; (2) economic duress; (3) tortious interference with contract; (4) breach of contract; and (5) unfair trade practices.  *See* Answer, Affirmative Defenses, and Countercl., Ex. B-1, Compl.

Sandy Marrett filed an insurance claim through Zurich's online portal on May 25, 2022 after obtaining information on force-placed insurance from Aroostook.  Zurich denied the claim on May 31, 2022, stating that "[t]he policy is a contract with [Aroostook] and they are the insured. . . .  [T]he insured has confirmed they are not pursuing a claim . . . ."[9]

On August 16, 2022, Maine Superior Court Justice Stephen Nelson, sitting in Aroostook County, issued an order recusing himself from the Foreclosure Case and transferring the Foreclosure Case to the Penobscot County Superior Court (the "Recusal Order").[10]  Approximately two weeks later, on August 31, 2022, Chief Justice Robert E. Mullen of the Maine Superior Court issued an order acknowledging that the Foreclosure Case was to be transferred to Penobscot County and specifically assigning all matters related to the Foreclosure Case to Justice Bruce Mallonee (sitting in the Penobscot County Superior Court) (the "Special Assignment Order").[11]

In January 2023, the Debtors removed the Foreclosure Case to the United States District Court for the District of Maine.[12]  Souza appeared as counsel for Aroostook in federal court. Ultimately, on April 10, 2023, the District Court granted Aroostook's motion to remand, holding that the removal was untimely.[13]  Meanwhile, in an order dated March 3, 2023, the state court denied the Debtors' motion for leave to amend their counterclaims.[14]  The court articulated two reasons for denial: first, permitting amendment would cause undue prejudice, and second, the

---

[9] Email dated May 31, 2022, 3:34 p.m., Compl., Ex. K.

[10] Recusal Order, Compl., Ex. M.

[11] Special Assignment Order, Compl., Ex. O.

[12] Order on Mot. to Remand, Aroostook Mot. to Dismiss, Ex. 3, Dkt. No. 33.

[13] *Id.*

[14] Order on Defs.-Counterclaimants' Mot. for Leave to Amend and Suppl. Countercl. and Mot. to Strike, Compl., Ex. Q-2.

proposed amendments were futile because they failed to state claims upon which relief could be granted.[15]  In the order, the court noted that some of the proposed amended counterclaims were brought under the implementing regulations of the Real Estate Settlement Procedures Act ("RESPA"), known as Regulation X, specifically 12 C.F.R. §§ 1024.39(a)–(b) and 1024.41(f), and concluded that such claims would be futile.[16]  Before the case was remanded to state court, Druary filed on the federal docket a copy of the state court's March 3, 2023 order denying leave to amend.

In January 2024, the Penobscot County Superior Court granted Aroostook's Motion for Summary Judgment on Count I for foreclosure.[17]  And, in an order dated October 21, 2024, that court granted a motion for sanctions against the Debtors and dismissed the Debtors' counterclaims with prejudice.[18]  Aroostook then filed a motion for final judgment in the Foreclosure Case.

In November 2024, before final judgment entered, the Debtors filed a notice of appeal in the Supreme Judicial Court, Sitting as the Law Court (the "Law Court").[19]  While the appeal was pending, however, the Law Court suspended Maine Rule of Appellate Procedure 3(b) to permit the Penobscot County Superior Court to take any action necessary to dispose of all motions then pending in the Foreclosure Case.[20]  The Penobscot County Superior Court then entered a Judgment of Foreclosure and Sale in December 2024 (the "Foreclosure Judgment").[21]

---

[15] *See id.*

[16] *See id.*

[17] J. of Foreclosure and Sale, Aroostook Mot. to Dismiss, Ex. 1, Dkt. No. 33.

[18] Order Granting Countercl. Def.'s Mot. for Sanctions Against Countercl. Pls. David and Sandy Marrett, Compl. Ex. T-2.

[19] *See* Dkt. R., Supreme Judicial Ct. Sitting as the Law Ct., Aroostook Mot. to Dismiss, Ex. 8, Dkt. No. 33.

[20] Order Permitting Trial Ct. Action, Compl., Ex. U-1.

[21] J. of Foreclosure and Sale, Aroostook Mot. to Dismiss, Ex. 1, Dkt. No. 33.

The Debtors filed various emergency motions with the Law Court attempting to stay or otherwise stop the entry of final judgment, but each emergency motion was denied.[22]  In an order dated December 30, 2024, Associate Justice Andrew M. Horton, writing for the court, noted that "[s]ince the docketing of their appeal a mere month ago, the Marretts have inundated the Court with repeated filings making similar claims and asking for similar 'emergency' relief.  The requests for relief have been meritless, and many are outside of the authority of the Court."[23]  The Law Court then warned that further filings not related to the appeal process, or correspondence directed to other entities, may result in monetary sanctions, dismissal of the appeal, or both.[24]

On April 4, 2025, the Debtors filed in Aroostook County a motion related to amended counterclaims.[25]  Sandy Marrett again filed in Aroostook County another related motion on April 25, 2025.[26]  Meanwhile, on April 7, 2025, the Debtors moved to voluntarily withdraw their appeal pending before the Law Court, and the Law Court dismissed the appeal on April 15, 2025.[27]  All pending requests for relief filed in the Aroostook County Superior Court were addressed and denied by the Penobscot County Superior Court on May 2, 2025.[28]

---

[22] *See* Order Dismissing Emergency Mot. to Stay, Compl., Ex. U-2; Order on Mot. for Emergency Relief, Compl., Ex. U-3; Order on Mot. to Reconsider and Mot. for Various Relief, Compl., Ex. U-4.

[23] Order on Mot. to Reconsider and Mot. for Various Relief, Compl., Ex. U-4.

[24] *Id.*

[25] Mot. to Proceed with Adjudication of Am. Countercl. Or, in the Alternative, Enter Default J., Compl., Ex. V-1.

[26] Mot. to Schedule Hr'g on Mot. to Adjudicate and Related Matters, Compl., Ex. W.

[27] *See* Order Regarding Future Filings, Aroostook Mot. to Dismiss, Ex. 7, Dkt. No. 33.

[28] *See id.*

On July 22, 2025, the Debtors filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code[29] in the District of Massachusetts.  The Debtors commenced this adversary proceeding by filing the Complaint on July 29, 2025, which contains the following Counts:

- Count I: "Fraud on the Court," brought under Federal Rule of Civil Procedure ("Federal Rule") 60(d)(3).

- Count II: "Civil Conspiracy to Obstruct Justice," in violation of 42 U.S.C. §§ 1985(2) and (3).

- Count III: "RESPA Violations and Wrongful Foreclosure," in violation of 12 C.F.R. §§ 1024.41(f)(1)(i), 1024.35(b)(6), 1024.30(c)(2), and 1024.41.

- Count IV: "Violations of the Fair Debt Collection Practices Act" (the "FDCPA"), in violation of 15 U.S.C. §§ 1692e and 1692f.

- Count V: "Bad Faith Insurance Handling/Breach of Implied Covenant," in violation of the Maine Unfair Claims Settlement Practices Act (the "Maine UCSPA" or "UCSPA"), Me. Rev. Stat. tit. 24-A, § 2436-A.

- Count VI: "Tortious Interference with a Civil Proceeding."[30]

The Complaint seeks the following relief: (1) disallowance or reclassification of certain insurance claims submitted by Aroostook, Zurich, and their agents; (2) declaratory and injunctive relief relating to the foreclosure and insurance claims, including, *inter alia*, that the Court declare the foreclosure void; (3) compensatory damages related to the Property and subsequent litigation in state and federal court; (4) statutory damages under state and federal law; (5) punitive damages against various parties; (6) equitable relief, including, *inter alia*, recission of any improperly obtained foreclosure judgment and a declaration that state court rulings are void; (7) fees and costs

---

[29] *See* 11 U.S.C. §§ 101 *et seq.*

[30] The Complaint contains a seventh count that is not the subject of any of the Motions to Dismiss discussed in this Memorandum.

of litigation under federal law; (8) referral to federal authorities and state bar associations for criminal and regulatory review; and (9) any other relief the Court deems just and proper.

The moving parties all contend that the counts asserted against them should be dismissed under Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Debtors, in their myriad oppositions, responses, supplements, and other filings, contend that the Complaint alleges facts sufficient to state claims upon which relief can be granted. In their filings, the Debtors address some, but not all, of the arguments presented by the moving parties, essentially repeating, in conclusory fashion, that the facts support the claims asserted.

The Debtors argue repeatedly and at length that the underlying Foreclosure Judgment is void because of, as the Debtors assert, procedural irregularities with respect to the Recusal Order. They maintain that the Recusal Order was jurisdictionally infirm because the recusing judge lost the authority to transfer the case in light of the recusal. The Debtors also assert that their amended counterclaims were therefore not actually adjudicated and the state court litigation is not final.

The parties' specific arguments will be addressed in turn below.

## II.   DISCUSSION

### A.   Legal Standard

In evaluating a motion to dismiss under Federal Rule 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), the Court must determine whether the Complaint contains "a short and plain statement," Fed. R. Civ. P. 8(a)(2), alleging sufficient "facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff]'s favor," *Back Beach Neighbors Comm.*

*v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023) (alteration in original) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022)), the Court "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," *id.* (quoting *Legal Sea Foods*, 36 F.4th at 33).

In addition to considering the facts alleged in the complaint and exhibits attached thereto, *Thorton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76, 81 (1st Cir. 2025) (citing *Freeman v. Town of Hudson*, 714 F.3d 29, 35–36 (1st Cir. 2012)), courts may consider documents "'fairly incorporated into the complaint,' 'facts susceptible to judicial notice,' and 'concessions in plaintiff[s'] response to the motion to dismiss,'" *Cheng*, 51 F.4th at 441 (alteration in original) (quoting *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 21 (1st Cir. 2018)); *see also Watterson*, 987 F.2d at 3 (noting that courts can also consider documents the authenticity of which are not disputed; official public records; documents central to the claims; and documents sufficiently referred to in the complaint). "When such documents contradict an allegation in the complaint, the document trumps the allegation." *Lowenstern v. Residential Credit Sols.*, C.A. No. 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) (citing *Clorox Co. P.R. v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

Where, as here, the Debtors are proceeding pro se, the Court construes the Complaint liberally. *See Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) (citation omitted).

### B.    Count I: "Fraud on the Court"

In Count I, the Complaint alleges that Kennedy-Jensen, Souza, and Druary (the "Count I Defendants")[31] committed fraud on the court by "submitting fabricated orders, false employer affiliations, and unserved pleadings; by misrepresenting docket entries; and by working with clerks to suppress filings and reroute the case without proper authority."[32]  The Debtors argue that events in the United States District Court for the District of Maine, including the filing of the state court order denying leave to amend the counterclaim on the federal docket, sufficiently demonstrates fraud on the court and therefore this Court should set aside the state court Foreclosure Judgment. The Count I Defendants argue that the claim should be dismissed because the Complaint fails to assert any legal basis for this claim.

Federal Rule 60(d)(3) permits a federal court to "set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  However, the First Circuit does not recognize fraud on the court as an independent cause of action except in rare circumstances.  *See, e.g., Bogosian v. R.I. Airport Corp. (T.F. Green Airport)*, C.A. No. 17-16S, 2017 WL 9324764, at *8 (D.R.I. May 3, 2017); *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, Civil Action No. 10-12043-GAO, 2012 WL 1065578, at *30 (D. Mass. Mar. 27, 2012).  "[A] claim of fraud o[n] the court may be sustained as an independent action only if the issue raised is 'egregious' and involves 'an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving

---

[31] In the Debtors' oppositions to the motions to dismiss filed by Zurich and to Aroostook, they assert that Zurich and Aroostook engaged in fraud on the court.  However, Count I is not directed against either of those parties.

[32] Compl. ¶ 51.

an officer of the court.'" *Bogosian*, 2017 WL 9324764, at *8 (quoting *Roger Edwards LLC v. Fiddles & Sons Ltd.*, 427 F.3d 129, 133 (1st Cir. 2005)). Setting aside a judgment under Federal Rule 60(d)(3) is a "drastic remedy . . . hedged with restrictions," *Torres v. Bella Vista Hosp., Inc.*, 914 F.3d 15, 18 (1st Cir. 2019), and "is limited to fraud that 'seriously affects the integrity of the normal process of adjudication' . . . for example, bribery of a judge or jury tampering," *id.* at 19 (quoting 12 *Moore's Federal Practice* § 60.21[4][a] (2018)).

Most importantly, "[f]raud on the court cannot be used to challenge conduct before a different court." *King v. Fields*, 790 F. Supp. 3d 32, 35 n.1 (D. Mass. 2025) (citing *Davidson v. Cao*, 211 F. Supp. 2d 264, 276–77 (D. Mass. 2002)); *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *10 n.5 (D. Me. Sept. 29, 2014) (noting that "fraud on the court is not available as an independent cause of action based on conduct that occurred before a different court" (citation omitted)).

Here, Count I fails to state a claim upon which relief can be granted because none of the alleged conduct occurred before this Court. *See King*, 790 F. Supp. 3d at 35 n.1; *Beaulieu*, 2014 WL 4843809, at *10 n.5. Additionally, none of the allegations relating to conduct that occurred in federal court in the District of Maine — namely that the case was removed to federal court; that Souza appeared as counsel in federal court; that Druary electronically filed on the docket a copy of the state court's order denying leave to amend; and that the case was remanded to state court — are "egregious," *Bogosian*, 2017 WL 9324764, at *8, describe "an unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter involving an officer of the court," *id.*, or constitute actions that would "seriously affect[] the integrity of the normal process of adjudication," *Torres*, 914 F.3d at 19. Entering an appearance or filing documents on a docket, even if fabricated, false, and unserved, as the Complaint asserts, is insufficient to meet the applicable standard. The remaining conduct alleged in the Complaint

occurred in state court, not federal court. *See Cline v. Burke*, 682 F. Supp. 3d 125, 134 (D. Mass. 2023)*, aff'd*, No. 23-1680, 2024 WL 5412394 (1st Cir. Oct. 16, 2024) (dismissing claim because, *inter alia*, "the alleged fraud appear[ed] to have been committed on [a state court], not a federal court"). Accordingly, Count I will be DISMISSED.

### C.    Count II: "Civil Conspiracy to Obstruct Justice"

In Count II, the Complaint alleges that Aroostook, Zurich, Solman & Hunter, Marden, Leahy, Kennedy-Jensen, Souza, and Druary (the "Count II Defendants") engaged in a civil conspiracy to obstruct justice in violation in 42 U.S.C. §§ 1985(2) and 1985(3). The Complaint alleges that the Count II Defendants "coordinated a series of fraudulent filings, fabricated records, and procedural manipulations within a Maine state and federal court,"[33] "acted with animus toward the [Debtors] as a pro se party [sic], and in retaliation for the [Debtors'] efforts to expose fraud and corruption,"[34] and "suppress[ed] insurance claims, initiate[d] fraudulent foreclosure, manipulate[d] court venue, and fabricate[d] filings."[35] The Complaint does not allege or otherwise identify which defendant took which act.

The Count II Defendants argue that the § 1985(2) claim fails because the Complaint does not allege that any of the Count II Defendants acted to intimidate the Debtors in any conduct related to federal court and that the § 1985(3) claim fails because the Complaint does not allege that the Debtors are members of a constitutionally protected class. The Debtors argue that the allegations are legally sufficient because the first clause of § 1985(2) does not require class-based animus for conspiracies to obstruct justice in federal court and that the obstruction of state court counterclaims

---

[33] Compl. ¶ 55.

[34] *Id.* at ¶ 57.

[35] *Id.* at ¶ 58.

12

through allegedly void orders and alleged venue manipulation is a "classic" offense under § 1985(2).[36] Additionally, the Debtors argue that "[t]he facts demonstrate that all defendants acted with the intent to deprive [the Debtors] of due process," thereby supporting the § 1985(3) claim.[37]

       1.    <u>42 U.S.C. § 1985(2)</u>

"Section 1985(2) contains two clauses; the first applies to federal court proceedings, and the second applies to state court proceedings." *Traudt v. Lebanon Police Dep't*, 749 F. Supp. 3d 251, 261 (D.N.H. 2024). The first clause makes it unlawful for "two or more persons in any State or Territory [to] conspire to deter by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." 42 U.S.C. § 1985(2). The second clause makes it unlawful for "two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws." *Id.*

"Courts must be careful to separate those parts of 42 U.S.C. § 1985 that relate to issues of federal concern from those that relate to issues of state concern." *J.S.H. v. Newton*, 654 F. Supp. 3d 7, 23 (D. Mass. 2023). "Interference with witnesses in a *state* court proceeding is modified by equal protection language and, as such, requires a discriminatory, class-based animus." *Id.* (citing *Kush v. Rutledge*, 460 U.S. 719, 725 (1983)). "By contrast, a plaintiff need not allege discriminatory animus to state a claim for the alleged obstruction of a federal court proceeding." *Traudt*, 749 F. Supp. 3d at 261 (citing *Kush*, 460 U.S. at 726).

---

[36] Pls.' Opp'n to Def. Zurich North America's Mot. to Dismiss, Dkt. No. 63 at 6.

[37] *Id.*

Here, the Complaint does not specify under which clause the § 1985(2) claim is brought, but nearly all the facts alleged relate to state court proceedings. The few allegations relating to federal court, described above, do not set forth any facts to support that any of the defendants forced, intimidated, or threatened any party or witness from attending or testifying in federal court. *See* 42 U.S.C. § 1985(2). Therefore, the Complaint fails to state a claim for relief under the clause of § 1985(2) addressed to federal court proceedings.

With respect to the state court proceedings, the Complaint alleges that the defendants acted with a discriminatory animus toward the Debtors as pro se litigants but offers no facts to support this assertion. Additionally, the Debtors have not provided, nor has the Court found, any authority supporting the proposition that a litigant's pro se status can serve as the basis for a finding of a discriminatory, class-based animus under § 1985. Therefore, because there is no allegation of a sufficient discriminatory, class-based animus, the Complaint fails to state a claim under the clause of § 1985(2) addressed to state court proceedings. *See Kush*, 460 U.S. at 726; *J.S.H.*, 654 F. Supp. 3d at 23. Accordingly, Count II fails to state a claim upon which relief can be granted under § 1985(2).

2.      42 U.S.C. § 1985(3)

To state a claim for relief under 42 U.S.C. § 1985(3), a plaintiff must allege the existence of a conspiracy, "that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). "Pleading a section 1985(3) conspiracy 'requires at least minimum factual support of the existence of a conspiracy.'" *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 17 (1st Cir. 1979)). "Vague and conclusory

14

allegations about persons working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Alston*, 988 F.3d at 578 (citing *Parker*, 935 F.3d at 18). "It has long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Pérez-Sánchez*, 531 F.3d at 107 (quoting *Griffin v. Breckenridge*, 403 U.S. 88 (1971)).

As stated above, the Complaint does not allege a sufficient discriminatory, class-based animus, and thus cannot support a § 1985(3) claim. The assertion that the Debtors were discriminated against because of their status as pro se litigants, although not specifically alleged in their § 1985(3) claim, again fails, as the Debtors have not provided, nor has the Court found, any authority supporting the proposition that a litigant's pro se status can serve as the basis of a discriminatory, class-based animus finding under § 1985. Further, the Complaint asserts only "[v]ague and conclusory allegations about persons working together," bereft of any specific facts about the defendants as to the "nature of their joint effort or the formation of their agreement." *Alston*, 988 F.3d at 578. Therefore, the Complaint fails to state a claim under § 1985(3).

Because the Complaint does not set forth facts to state a claim upon which relief can be granted under either 42 U.S.C. §§ 1985(2) or 1985(3), Count II will be DISMISSED.

### D.     Count III: "RESPA Violations and Wrongful Foreclosure"

In Count III, the Debtors assert claims against Aroostook, Solman & Hunter, and Solman (the "Count III Defendants") for violations of RESPA (specifically, its implementing regulation known as Regulation X) in connection with the servicing and foreclosure of the Debtors' Mortgage. The Complaint alleges that the Count III Defendants (1) prematurely issued a notice to cure and initiated foreclosure proceedings before the loan was delinquent for 120 days, in violation of 12 C.F.R. § 1024.41(f)(1)(i); (2) included inaccurate or duplicative amounts in payoff or

reinstatement demands, such as fees and premiums that had been capitalized into the loan balance, in violation of 12 C.F.R. § 1024.35(b)(6); and (3) falsely asserted that the Property was not owner-occupied (despite the Debtors' intention to return to the Property and occupy it), in violation of 12 C.F.R. §§ 1024.30(c)(2) and 1024.41.

"The Consumer Financial Protection Bureau (CFPB) promulgated 'Regulation X' pursuant to RESPA." *Jackson v. Rushmore Loan Mgmt. Servs. (In re Jackson)*, 622 B.R. 321, 328 (Bankr. D. Mass. 2020) (citing 12 C.F.R. §§ 1024.1–1024.41). "Regulation X is the implementing regulation of RESPA, and creates an error resolution process that defines [mortgage loan] servicers' obligations under the statute." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 438 (D. Me. 2017) (citations omitted). "Section 2605(f) of [RESPA] provides a private right of action for violations of [Regulation X]." *DeCotis v. Specialized Loan Servicing, LLC*, 642 F. Supp. 3d 181, 185 (D. Mass. 2022).

The Count III Defendants argue that Count III must be dismissed because the claims are barred by the doctrine of res judicata, because the claims are time-barred, and because the facts alleged fail to state a claim upon which relief can be granted. Aroostook also specifically notes that the Debtors ask this Court to void the Foreclosure Judgment, an action not permitted under the *Rooker-Feldman* doctrine.[38] The Debtors maintain that *Rooker-Feldman* and res judicata do not apply because the Recusal Order deprived the trial court of subject matter jurisdiction. At the same time, the Debtors assert that their amended counterclaim, which included RESPA claims, was not adjudicated. Ultimately, the Debtors appear to argue that the state court action is not final.

      1.    *Rooker-Feldman*

---

[38] *See* Aroostook Mot. to Dismiss, Dkt. No. 33 at 2.

The Court is barred by the *Rooker-Feldman* doctrine[39] from considering the claims in Count III. "Because the *Rooker-Feldman* doctrine directly affects a court's subject-matter jurisdiction, it is appropriate to begin by discussing whether and to what claims the doctrine applies here." *Goldsmith v. Massad (In re Fiorillo)*, 494 B.R. 119, 140 (Bankr. D. Mass. 2013).

> The *Rooker-Feldman* doctrine preserves the Supreme Court's exclusive jurisdiction over "appeals from final state-court judgments," *Lance v. Dennis*, 546 U.S. 459, 463, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (per curiam), by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–93, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005); *Coggeshall v. Mass. Bd. of Regist. of Psychologists*, 604 F.3d 658, 663 (1st Cir. 2010). Specifically, the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments [that were] rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284.

*Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64–65 (1st Cir. 2018) (alterations in original).

The *Rooker-Feldman* doctrine applies to "(1) a party who lost in a state-court judgment that (2) was rendered before the federal action commenced, where (3) the party complains of injuries caused by the state-court judgment and (4) invites [federal] court review and rejection of those judgments." *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 79 (D. Mass. 2015), *aff'd*, No. 15-1537, 2016 WL 10454553 (1st Cir. Nov. 30, 2016) (citing *Silva v. Massachusetts*, 351 F. App'x 450, 454 (1st Cir. 2009)). Furthermore, "application of the *Rooker-Feldman* doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the federal suit." *Klimowicz*, 907 F.3d at 66 (citing *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 (1st Cir. 2004)).

---

[39] *See generally Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

All four elements are satisfied here.  First, the Debtors lost in the state court Foreclosure Judgment.    Second, the Foreclosure Judgment entered before this adversary proceeding commenced.  Third, Count III "seeks to challenge the validity of . . . the foreclosure," *Klimowicz*, 907 F.3d at 65, and thus it complains of injuries caused by the Foreclosure Judgment in favor of Aroostook, *see id.*  Fourth, Count III invites this Court to review the Foreclosure Judgment and declare it void.

While the Debtors attempt to "evade the reach of the *Rooker-Feldman* doctrine by artful pleading," *id.*, and by arguing that they do not seek to relitigate the foreclosure or invite this Court to review or reject the judgment,[40] that is precisely what Count III seeks and what *Rooker-Feldman* prohibits.  In the prayer for relief, the Debtors ask this Court to, *inter alia*, rescind any improperly obtained foreclosure judgment and to declare state court rulings void.  In other words, granting the requested relief "would effectively reverse the state court decision or void its holding."  *Schwartz v. Schwartz (In re Schwartz)*, 409 B.R. 240, 247 (B.A.P. 1st Cir. 2008) (quoting *Halvorsen v. Mendez (In re Mendez)*, 246 B.R. 141, 145 (Bankr. D.P.R. 2000)); *see also Klimowicz*, 907 F.3d at 66 (finding that plaintiff's requested "remediation would necessarily invite the district court to review, reject, and reverse the state court['s] rulings").  Therefore, *Rooker-Feldman* applies here and the Court lacks subject matter jurisdiction to consider the claims raised under Count III.

2.    Aroostook

Even if *Rooker-Feldman* did not apply, and the Court had jurisdiction over Count III, the claims against Aroostook would be barred by the doctrine of res judicata.  "[A] judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."  *Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC*

---

[40] *See, e.g.*, Pls.' Opp'n to Def. Zurich North America's Mot. to Dismiss, Dkt. No. 63 at 1.

*(In re Kittery Point Partners, LLC)*, 623 B.R. 825, 838 (B.A.P. 1st Cir. 2021), *aff'd*, 858 F. App'x 386 (1st Cir. 2021) (alteration in original) (quoting *Pinsoy v. Ahmed (In re Sonus Networks, Inc.)*, 499 F.3d 47, 56 (1st Cir. 2007)).  Accordingly, "the preclusive effect of the [judgment from the state court] is determined under Maine law." *Id.*  Under Maine law, a party "cannot again come forward in the same legal mission against the same parties to secure a remedy . . . previously denied." *Portland Water Dist. v. Town of Standish*, 940 A.2d 1097, 1099 (Me. 2008) (quoting *Harriman v. Border Tr. Co.*, 842 A.2d 1266, 1267 (Me. 2004)).

Res judicata "has two components: collateral estoppel, also known as issue preclusion, and claim preclusion." *Wilmington Tr. Co. v. Sullivan-Thorne*, 81 A.3d 371, 374 (Me. 2013) (quoting *Kurtz & Perry, P.A. v. Emerson*, 8 A.3d 677, 681 (Me. 2010)).  Claim preclusion would apply here. "Claim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action." *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049, 1058 (Me. 2024) (alteration in original) (quoting *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997)).  "To determine whether the matter[] presented for decision in the instant action [was] or might have been litigated in the prior action, [Maine courts] examine whether the same cause of action was before the court in the prior case." *Wilmington*, 81 A.3d at 375 (quoting *In re Kaleb D.*, 769 A.2d 179, 184 (Me. 2001)).  To define a cause of action, Maine courts apply a transactional test to determine if the claims "were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Id.* (quoting *Sebra v. Wentworth*, 990 A.2d 538, 543 (Me. 2010)).

Here, claim preclusion would apply to Aroostook because (1) the prior action involved the same parties; (2) a final judgment entered in the prior action and the Debtors voluntarily withdrew

their appeal; and (3) the claims in Count III — namely those related to RESPA violations and wrongful foreclosure — presented in this "action were, or might have been[,] litigated in the first action." *Finch*, 307 A.3d at 1058.

The state court denied the Debtors' motion for leave to amend their counterclaims, which included, *inter alia*, a claim brought under 12 C.F.R. § 1024.41(f).[41]  In Maine, a "Superior Court's refusal to grant leave to amend has a preclusive effect on [a plaintiff's] attempt to raise the identical claims in subsequent litigation." *Dall v. Goulet*, 871 F. Supp. 518, 521 (D. Me. 1994); *see also Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 46 n.6 (1st Cir. 2012).  Therefore, the Debtors would be barred from asserting the claim under 12 C.F.R. § 1024.41(f)(1)(i).  Additionally, the claim under 12 C.F.R. § 1024.35(b)(6) would be barred because the claim "arose out of the same nucleus of operative facts," *Wilmington Tr. Co.*, 81 A.3d at 375, as the prior action, namely the September 2021 Letter.  Accordingly, claim preclusion would apply to the claims under 12 C.F.R. §§ 1024.41(f)(1)(i) and 1024.35(b)(6).

The other claims, asserting violations of 12 C.F.R. §§ 1024.30(c) and 1041, arise out of statements made in judicial proceedings that the Property was not owner-occupied.  While those claims do not arise out of the same nucleus of operative facts as the other claims, Aroostook is entitled to absolute privilege under state law.  "Maine law accords an absolute privilege against liability in later lawsuits 'for statements made in the course of judicial proceedings.'" *Bradbury v. GMAC Mortg., LLC*, 780 F. Supp. 2d 108, 111 (D. Me. 2011) (quoting *Creamer v. Danks*, 863 F.2d 1037, 1037 (1st Cir. 1988)).  This absolute privilege equally applies to pleadings.  *See OfficeMax Inc. v. Sousa*, 773 F. Supp. 2d 190, 237 (D. Me. 2011) (noting that "it is settled law in Maine that allegations made in pleadings are absolutely privileged" (internal quotation omitted)).

---

[41] *See* Order on Defs.-Counterclaimants' Mot. for Leave to Amend and Suppl. Countercl. and Mot. to Strike, Compl., Ex. Q-2.

Therefore, the remaining claims under 12 C.F.R. §§ 1024.30(c) and 1024.41 based on the classification of the Property as not owner-occupied would both fail.

### 3.      Solman & Hunter and Solman

Similarly, even if *Rooker-Feldman* did not apply, and the Court had jurisdiction over Count III, the claims against Solman & Hunter and Solman would still fail because the allegations in Count III do not state a claim upon which relief can be granted as to either Solman & Hunter or Solman.

First, there are no specific factual allegations regarding Solman & Hunter or Solman related to the September 2021 Letter, which forms the basis of the asserted claims brought under 12 C.F.R. §§ 1024.41(f)(1)(i) and 1024.35(b)(6).  Those regulations simply would not apply.  Second, for the same reasons discussed above, to the extent that Count III seeks to hold Solman & Hunter and Solman liable for statements made in judicial proceedings that the Property was not owner-occupied, they are entitled to absolute privilege because such statements were submitted in state court pleadings on behalf of their client, Aroostook.  *See Bradbury*, 780 F. Supp. 2d at 111; *OfficeMax*, 773 F. Supp. 2d at 237.  Therefore, the remaining claims under 12 C.F.R. §§ 1024.30(c) and 1024.41 based on the classification of the Property as not owner-occupied would both fail. Accordingly, Count III fails to state any claim upon which relief can be granted as to either Solman & Hunter or Solman.

### 4.      Statute of Limitations

Finally, even if *Rooker-Feldman* and res judicata did not apply, the claims in Count III would be barred by Regulation X's three-year statute of limitations.  "A claim under RESPA § 2605 must be filed within three years of a violation."  *Saade v. Sec. Connection Inc.*, 282 F. Supp. 3d 414, 419 (D. Mass. 2017) (citing 12 U.S.C. § 2614); *DeCotis*, 642 F. Supp. 3d at 185; *see also Dail*

Case 25-03006   Doc 186   Filed 02/19/26   Entered 02/19/26 16:55:39   Desc Main
Document     Page 22 of 30

*v. Bank of Am., N.A.*, Civil Action No. 2:18-cv-640, 2019 WL 921452, at *5 (E.D. Va. Feb. 21, 2019) (noting that "Regulation X has a three-year statute of limitations" (citing 12 U.S.C. §§ 2605, 2614)).

Here, all facts relating to the Regulation X claims are rooted in the September 2021 Letter and court filings from February and March 2022. The Complaint was filed on July 29, 2025, more than three years after the alleged violations. Therefore, the claims in Count III would be time-barred. *See* 12 U.S.C. § 2614. Count III will be DISMISSED.

### E.      Count IV: "Violations of the Fair Debt Collection Practices Act"

Count IV alleges that Aroostook, Solman & Hunter, and Solman (the "Count IV Defendants") violated the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f, by using deceptive, unfair, and abusive practices in connection with the foreclosure of the Property through misrepresentation, false statements, and misclassification of the Property. The Count IV Defendants argue that the FDCPA does not apply to any of them because there are no allegations or facts to support that any of them was attempting to collect a debt "owed or due another," as required under 15 U.S.C. § 1692a(6), and that the claims are barred by 15 U.S.C. § 1692k's one-year limitation period. The Debtors did not address Count IV in their filings or at the October 23, 2025 Hearing.

"In order to prevail on an FDCPA claim, [a] plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants have engaged in an act or omission prohibited by the FDCPA." *Murray v. Revenue Mgmt. Corp. (In re Murray)*, 552 B.R. 1, 4 (Bankr. D. Mass. 2016) (quoting *Claudio v. LVNV Funding, LLC (In re Claudio)*, 463 B.R. 190, 193 (Bankr. D. Mass. 2012)).

> The restrictions of the FDCPA only apply to those defendants who meet the definition of "debt collector." Under the statute, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business

the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

*O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 31 (D. Mass. 2014) (quoting 15 U.S.C. § 1692a(6)).

       1.    <u>Aroostook</u>

Here, the Complaint does not allege that Aroostook is a "debt collector," that Aroostook was attempting to collect a debt "owed or due another," 15 U.S.C. § 1692a(6), or that Aroostook's principal purpose is the collection of debts. Rather, the allegations in the Complaint, as well as the content of the September 2021 Letter, all indicate that Aroostook was attempting to collect mortgage payments owed to itself by the Debtors. *See O'Connor*, 992 F. Supp. 2d at 31–32 (finding that bank was not a debt collector because it sought payment of "fees asserted to be due to itself"). Therefore, Aroostook is not a "debt collector" as defined by the FDCPA. Because the Complaint does not sufficiently allege that Aroostook is a "debt collector" under the FDCPA, Count IV fails to state a claim upon which relief can be granted as to Aroostook.

       2.    <u>Solman & Hunter and Solman</u>

As to Solman & Hunter and Solman, the Complaint alleges only that Solman is a partner at Solman & Hunter, and that the firm, through Solman, "actively concealed Zurich's liability, misrepresented the insurance status, and enabled a fraudulent foreclosure process."[42] First, these allegations are conclusory because there are no additional facts alleged to support how Solman & Hunter or Solman concealed any liability, misrepresented any insurance status, or enabled any fraudulent foreclosure process. Second, even if there were facts to support these conclusory allegations, and even if Solman & Hunter and Solman could be considered "debt collectors" under

---

[42] Compl. ¶ 7.

the FDCPA for their conduct related to the Foreclosure Case, the statute of limitations would apply

and the FDCPA claims would be time-barred.

Claims based on violations of the FDCPA must be brought "within one year of the date on

which the violation occurs." 15 U.S.C. § 1692k(d). Here, the alleged FDCPA violations relate to

conduct that occurred prior to, or in the early stages of, the Foreclosure Case, more than one year

prior to the commencement of this adversary proceeding. Therefore, the claims asserted in Count

IV are time-barred under § 1692k(d). *See Saade*, 282 F. Supp. 3d at 418 (dismissing FDCPA claim

because complaint was filed more than one year after the alleged violation and was therefore barred

by the statute of limitations).

Because the Complaint does not set forth sufficient factual allegations against Solman &

Hunter and Solmon, and because the claims are time-barred, Count IV fails to state a claim upon

which relief can be granted as to Solman & Hunter and Solmon. Accordingly, Count IV will be

DISMISSED.

### F.    Count V: "Bad Faith Insurance Handling/Breach of Implied Covenant"

Count V alleges that Zurich, as provider and administrator of a force-placed insurance

policy on the Property, breached the implied covenant of good faith and fair dealing and that Zurich

violated Maine's UCSPA, *see* Me. Rev. Stat. tit. 24-A, § 2436-A, by "re-opening [an insurance]

claim in 2025, then closing it without action."[43]  Zurich argues that the Debtors cannot bring a

claim under Maine's UCSPA because there is no allegation that Zurich issued any policy to the

Debtors and because the Debtors are not named insureds under the force-placed insurance policy

and do not hold any rights against Zurich. The Debtors argue that they can assert these claims

---

[43] Compl. ¶ 72-D. The Complaint contains no factual allegations as to any insurance claim or related
conduct that occurred in 2025.

because of Zurich's purportedly "central role in [the] litigation" and because Zurich "open[ed] and manag[ed] claims in [the Debtors'] names."[44]  In reply, Zurich reiterates that the Debtors failed to allege that they are named insureds under any Zurich policy, a requirement under the statute.

"Maine's Unfair Claims Settlements Practices Act generally prohibits insurers from offering threats or knowing misrepresentations, failing to act within a reasonable amount of time, or contesting the basis or amount of liability without a reasonable basis." *Maine Woods Pellet Co., LLC v. Western World Ins. Co.*, 401 F. Supp. 3d 194, 206 (D. Me. 2019) (citations omitted).  By its plain language, the UCSPA applies to "[a] person injured by . . . [certain] actions taken by that person's own insurer . . . ."  Me. Rev. Stat. tit. 24-A, § 2436-A(1).  Put another way, a party must be named as an "insured" to assert such a claim.  *See, e.g., Anderson v. Virginia Sur. Co., Inc.*, 985 F. Supp. 182, 192 (D. Me. 1998) (explaining that the UCSPA "statute permits insureds to bring civil actions against their insurers for certain conduct"); *Curtis v. Allstate Ins. Co.*, 787 A.2d 760, 767 (Me. 2002) (noting that the UCSPA creates liability for an insurer to its insured for knowing misrepresentations of pertinent facts or policy provisions related to coverage).

Here, the Debtors do not allege that they are named on any Zurich insurance policy.  In fact, the Debtors admit that Aroostook is the "named insured" on the relevant policy.[45]  Although the Debtors attempt to argue that opening an insurance claim related to the policy, at the Debtors' request, permits them to bring this action, that argument is not persuasive because the Debtors are not the insured parties under the policy.[46]  Therefore, because the Debtors are not the named insureds under the policy, they cannot bring a claim under Maine's UCSPA.

---

[44] Pls.' Opp'n to Def. Zurich North America's Mot. to Dismiss, Dkt. No. 63 at 4–5.

[45] *See* Compl. ¶ 72-C.

[46] *See id.*; Email dated May 31, 2022, 3:34 p.m., Compl., Ex. K (stating that Aroostook is the insured party on the policy).

To the extent that Count V asserts an independent tort claim related to bad faith, such an action is not recognized in Maine. *See Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 652 (Me. 1993). And to the extent that Count V asserts a claim for breach of the covenant of good faith and fair dealing, "[t]he Maine Law Court has refused to recognize a separate tort action for an insurer's breach of its duty of good faith and fair dealing in its interactions with its insured." *Anderson*, 985 F. Supp. at 185 (citing *Marquis*, 628 A.2d at 652). Therefore, even if the Debtors were the named insureds under the relevant policy, a separate tort claim based on a breach of the duty of good faith and fair dealing would fail. Accordingly, Count V will be DISMISSED.

### G.   Count VI: "Tortious Interference with a Civil Proceeding"

Count VI asserts a claim for "tortious interference with a civil proceeding" against Zurich, Solman & Hunter, Marden, Leahy, Souza, and Druary (the "Count VI Defendants"). The Complaint alleges that the Count VI Defendants, "acting under the direction of Zurich," interfered with the Debtors' legal proceedings by "[i]ssuing informal discovery threats . . . [f]abricating or altering docket entries . . . [s]ubmitt[ing] ghost pleadings without service or judicial review . . . [and] [e]ngag[ing] in misconduct meant to delay, intimidate, or sabotage the [Debtors'] access to justice."[47]

The Count VI Defendants argue that the claim fails because (1) "tortious interference with a civil proceeding" is not a cognizable cause of action in Maine; (2) the authorities cited in Count VI either do not exist or do not support such a cause of action; and (3) other tort remedies are not supported by the factual allegations. The Debtors respond by asserting that the Count VI Defendants' argument that Maine law does not recognize "tortious interference with a civil

---

[47] Compl. ¶ 77.

proceeding" as a cause of action is misplaced because the allegations of venue manipulation and filing of void orders support other causes of action regardless of how the claims are labeled.

1.      Tortious Interference with a Civil Proceeding

The claim of "tortious interference of a civil proceeding" is not recognized as a cause of action in Maine.  Two of the three authorities on which the Debtors rely in the Complaint do not support, let alone relate to, a cause of action for "tortious interference with a civil proceeding." The first authority, *Bell v. Mazza*, is a Massachusetts opinion involving a property dispute and alleged violations under 42 U.S.C. § 1985(3) and Mass. Gen. Laws ch. 12, § 11*l* for alleged interference with rights secured by the United States and Massachusetts constitutions.  *See* 474 N.E.2d 1111, 1112 (Mass. 1985).  While the case mentions "interference," it does so in the context of federal and state constitutional law.  *See id.*  The second authority cited by the Debtors, the Restatement (Second) of Torts, § 766, discusses intentional interference with performance of a contract by a third person, not "tortious interference with a civil proceeding."  *See* Restatement (Second) of Torts, § 766 (A.L.I. 1979).

The third authority cited by the Debtors appears to be a nonexistent case.  The Debtors cite to "*Goguen v. Nason*, 419 A.2d 1032 (Me. 1980)" for the proposition that "Maine Courts have held that interference with legal relations, including through procedural sabotage, gives rise to tort liability."[48]  Westlaw and Lexis searches for the citation "419 A.2d 1032" yield a page from a different opinion: *Ridgway v. Prudential Ins. Co. of Am.*, 419 A.2d 1030 (Me. 1980).  That opinion discusses constructive trusts and insurance proceeds, not "tortious interference with a civil

---

[48] Compl. ¶ 79.

proceeding."[49]   In short, the Debtors have not provided, nor has the Court found, any authority to support a cause of action under Maine law for "tortious interference with a civil proceeding."

### 2.   Abuse of Process

Although not well developed in the Complaint, to the extent that Count VI asserts a claim for abuse of process,[50] the facts alleged do not state a claim upon which relief can be granted. "Maine law has identified two elements necessary to sustain an abuse of process claim: '1) a use of the process in a manner not proper in the regular conduct of the proceedings and, 2) the existence of an ulterior motive.'"   *OfficeMax Inc.*, 773 F. Supp. 2d at 240 (quoting *Grace v. Yarnall*, 346 F. Supp. 2d 222, 224 (D. Me. 2004)).

"The term 'process' does not refer to 'the legal process generally' but rather to 'the instruments by which courts assert their jurisdiction and command others to appear, act, or desist.'" *Leighton v. Lowenberg*, 290 A.3d 68, 73–74 (Me. 2023) (quoting Restatement (Third) of Torts: Liab. For Econ. Harm § 26 cmt. b (A.L.I. 2020)).   "Abuse of process may be demonstrated 'if a [p]laintiff can show an improper use of process for an immediate purpose other than that for which it was designed and intended.'" *OfficeMax*, 773 F. Supp. 2d at 240 (quoting *Grace*, 346 F. Supp. 2d at 224).   "Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." *Id.* (quoting *Grace*, 346 F. Supp. 2d at 224).

The Complaint's conclusory allegations relating to alleged venue and docket manipulation simply do not constitute "process" for purposes of an abuse of process claim. *See Leighton*, 290 A.3d at 73–74; *OfficeMax*, 773 F. Supp. 2d at 240.   Here, the only relevant allegations are those

---

[49] Citations to nonexistent cases, mis-quotes, and misleading characterizations of existing cases have been a recurring issue in both this adversary proceeding and the main case.  The Court has previously sanctioned the Debtors for violations of Bankruptcy Rule 9011 in both this adversary proceeding and the main case. *See* Order, Nov. 20, 2025, Dkt. No. 143.

[50] *See* Compl. ¶ 78.

relating to discovery.  Specifically, the Complaint alleges that Marden engaged in "a campaign of informal 'ghost filings' without entering an appearance,"[51] and issued threats, interrogatories, and deposition notices "outside the rules of procedure."[52]  The Complaint provides no facts to support these allegations, particularly those relating to threats.  The Complaint also alleges that "[f]rom Spring 2023 through Fall of 2024 . . . attorneys . . . [p]ressed for depositions just five days after the death of [Sandy] Marrett's mother."[53]  Even assuming that is true, in the absence of additional facts, the Court cannot reasonably infer that any of the defendants used discovery for any improper purpose in the state court action.  *See OfficeMax*, 773 F. Supp. 2d at 240.  Accordingly, the Complaint does not allege facts sufficient to state a claim for abuse of process.

3.    <u>Wrongful Use of Civil Proceedings</u>

While Maine does not recognize a cause of action for "tortious interference with a civil proceeding," wrongful use of civil proceedings is recognized under Maine law.

> The tort of wrongful use of civil proceedings exists where (1) one initiates, continues, or procures civil proceedings without probable cause, (2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings are based, and (3) the proceedings have terminated in favor of the person against whom they are brought.

*Leighton*, 290 A.3d at 74–75 (quoting *Pepperell Tr. Co. v. Mountain Heir Fin. Corp.*, 708 A.2d 651, 656 (Me. 1998)).

Here, the Complaint does not allege that the Foreclosure Case was initiated, continued, or procured without probable cause, nor does the Complaint allege facts that demonstrate the primary purpose of the Foreclosure Case was not to secure the proper adjudication of the claims related to

---

[51] Compl. ¶ 30.

[52] *Id.*

[53] *Id.* at ¶ 39.

the foreclosure.  *See id.* at 74.  While the Complaint asserts conclusory statements that, for example, "[e]very legal pathway was intentionally blocked,"[54] or that defendants engaged in "a multi-year cover up,"[55] such statements are not supported by any well-pleaded facts.  And notably, the Foreclosure Case did not terminate in favor of the Debtors, the parties against whom the proceedings were brought.  *See Leighton*, 290 A.3d at 74–75.  Therefore, the Complaint does not set forth sufficient facts to state a claim for wrongful use of civil proceedings.

Accordingly, because the Complaint fails to state a claim for "tortious interference with a civil proceeding," abuse of process, or wrongful use of civil proceedings, Count VI will be DISMISSED.

III.   <u>CONCLUSION</u>

For all the foregoing reasons, the Motions to Dismiss will be GRANTED.  Counts I–VI asserted against Aroostook County Federal Savings and Loan; Solman & Hunter, P.A.; Monaghan Leahy, LLP; Christine Kennedy-Jensen; Lauren K. Souza; Marden, Dubord, Bernier & Stevens, P.A.; William Druary, Jr.; Richard Solman; and Fidelity and Deposit Company of Maryland, incorrectly sued as "Zurich North America Insurance Company," will be DISMISSED.  Separate orders in conformity with this Memorandum will issue forthwith.


DATED: February 19, 2026                By the Court,

                                        Elizabeth D. Katz
                                        United States Bankruptcy Judge

---

[54] Compl. ¶ 47.

[55] *Id.* at ¶ 48.